UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| FANNIE J. CAMPBELL, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 13-25-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| CAROLYN COLVIN, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Plaintiff, Fannie Campbell, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her application for disability insurance benefits and Supplemental Security Income. The Court, having reviewed the record and for the reasons set forth herein, will deny Campbell's Motion for Summary Judgment [R. 10] and grant the Commissioner's [R. 14].

I

Campbell filed her application for disability insurance benefits and SSI on May 17 and June 15, 2010, respectively. [Transcript (Tr.) 220, 221, 298]. She alleges a disability beginning on July 15, 2005, due to depression, fibromyalgia, and heart problems. [Tr. 349]. Campbell's application was denied initially and upon reconsideration. [Tr. 220, 223]. Subsequently, at Campbell's request, an administrative hearing was conducted before Administrative Law Judge Brian LeCours (ALJ) on November 3, 2011. [Tr. 135]. During the hearing, the ALJ heard testimony from Campbell and vocational expert (VE) David Burnhill. [*Id.*] Campbell, who was fifty years old as of the date of the ALJ's decision, has completed twelfth grade and is a licensed

practical nurse. [Tr. 141-42, 349-50]. Campbell has past relevant work as a nurse, and though the VE testified that she could no longer perform that work, he found that there are jobs that exist in significant numbers in the national economy that Campbell could perform, and the ALJ accepted that testimony. [Tr. 126-27].

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

In this case, at Step 1, the ALJ found that Campbell has not engaged in substantial gainful activity since July 1, 2005, the alleged onset date. [Tr. 120]. At Step 2, the ALJ found that

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

Campbell has the following severe impairments: affective disorder; anxiety disorder; chronic cervical thoracic and lumbosacral strain; chronic arthralgias and osteoarthritis; fibromyalgia; and coronary artery disease post myocardial infarction. [*Id.*] At Step 3, the ALJ found that Campbell's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. [Tr. 121]. At Step 4, the ALJ determined that Campbell is unable to perform any past relevant work. [Tr. 125]. However, at Step 5 the ALJ relied on the testimony of the VE to find that, based on Campbell's residual functional capacity, there are jobs that exist in significant numbers in the national economy that Campbell could perform. [Tr. 126]. Accordingly, on November 16, 2011, the ALJ issued an unfavorable decision, finding that Campbell was not disabled, and therefore, ineligible for SSI. [Tr. 127]. The Appeals Council declined to review the ALJ's decision [Tr. 105-07] and Campbell now seeks judicial review in this Court.

II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id.* (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *Mullen*, 800 F.2d at 545.

A

Campbell initially argues that the Agency's decision should be reversed and she should be awarded benefits because the Administrative Law Judge was biased against her. In her view, the ALJ did not allow her attorney to cross examine the vocational expert. As a result, she believes the record was not fully developed concerning the cumulative effect of all the moderate impairments on her ability to obtain work.

When considering a claim that an ALJ's decision is colored by bias, the Court must begin with the "presumption that policymakers with decisionmaking power exercise their power with honesty and integrity." *Collier v. Comm'r of Soc. Sec.*, 108 F. App'x 358, 363-64 (6th Cir. 2004) (citing *Navistar Int'l. Transportation Corp. v. United States Environmental Protection Agency,* 941 F.2d 1339, 1360 (6th Cir.1991)). "The burden of overcoming the presumption of impartiality 'rests on the party making the assertion [of bias],' and the presumption can be overcome only with convincing evidence that 'a risk of actual bias or prejudgment' is present." *Id.* (citing

*Navistar Int'l. Transportation Corp.,* 941 F.2d at 1360 (6th Cir.1991)). That is to say, "any alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference." *Id.* (citing *Navistar Int'l. Transportation Corp.,* 941 F.2d at 1360 (6th Cir.1991)).

As an initial matter, it should be noted that Campbell is making this argument too late. "If [Campbell] felt that she was being deprived of a fair hearing, the proper procedure would have been for her to request the examiner to withdraw from the case. *Wells v. Apfel*, 234 F.3d 1271 (6th Cir. 2000) (citing 20 C.F.R. § 404.922). In failing to do so, Campbell has essentially waived her right to object to the conduct of the examiner now. *Id.* ("Thus, appellant's failure to request withdrawal of the examiner during the hearing or in her request for review before the Appeals Council constitutes a waiver of her right to object to the conduct of the examiner.").

The Court has nevertheless reviewed the record and found it devoid of any indication that the ALJ was biased against Campbell. The ALJ conducted a lengthy and thorough hearing in which Campbell was given the opportunity to answer numerous relevant questions about her claim. [Tr. 135-212]. In determining Campbell's ability to perform her past work and other jobs in the national economy, the ALJ questioned a Vocational Expert. [Tr. 192]. He asked the Vocational Expert a number of hypothetical questions, including one that assumed that Campbell was as limited as she represented herself to be. [Tr. 192-199]. The ALJ also provided an opportunity for Campbell's attorney to cross-examine the Vocational Expert. [Tr. 197-210]. That cross-examination began with a brief discussion of the definition of the words "poor" and "fair." [Tr. 197-99]. Though the ALJ, the Vocational Expert, and the Attorney appeared to be on different pages as to the definition of those terms based on old and new forms, they appeared to come to enough of a consensus to allow the Attorney to ask a hypothetical involving those

terms. [Tr. 199]. The Vocational Expert provided a lengthy response to this hypothetical question. [Tr. 203]. The Attorney's next hypothetical question involved a "moderate" limitation, and the ALJ and the Vocational Expert again asked for clarification about how the Attorney was defining the term. [Tr. 204]. During a protracted discussion that followed, the Attorney noted that he was referencing a specific exhibit and the ALJ then summarized his understanding of "moderate" based on the ultimate conclusion of that exhibit. [Tr. 206]. The Vocational Expert noted that even accepting the conclusions of that exhibit, substantial jobs would remain in the national economy for Campbell. [Tr. 208]. The ALJ then stated, "Okay, thank you, sir. Counsel?" [Tr. 208]. This would seem to have been a prime opportunity for the Attorney to object to the ALJ's conduct, clarify his meaning further, or otherwise make his concerns about judicial bias known. However, the Attorney simply moved on to his next hypothetical, which also featured moderate limitations. [Tr. 209]. After the vocational expert answered that question, the Attorney stated, "That's all the questions I have." [Tr. 210]. This exchange appears unremarkable and certainly reveals no convincing evidence of judicial bias. On the contrary, the record shows that the ALJ conducted a thorough examination, allowed robust cross examination, and attempted to work with the Attorney to arrive at common meaning to terms in the hypotheticals. Thus, Campbell has not overcome the presumption of honesty and integrity, and reversal is not required due to judicial bias.

B

Campbell also briefly argues that reversal is required because the ALJ did not formulate the Residual Functional Capacity to account for all of the severe limitations that he acknowledged. In Campbell's view, since the ALJ assessed him with severe impairments of affective disorder and anxiety disorder, he should have modified the RFC to include limitations

6

in concentration, pace, and persistence. However, Campbell provides no persuasive argument nor cites no binding authority for this conclusion. The RFC limited Campbell to simple, routine tasks with short, simple instructions, and only simple work-related decisions with few workplace changes. [Tr.122]. It would seem that the ALJ did not include additional limitations related to concentration, pace, and persistence, because he did not find support in the record for such limitations in the record. *See* 20 C.F.R. 404.1520(e); 416.920(e), 404.1545; 416.945; SSR 98-8. After all, substantial evidence of the record supports that conclusion. The ALJ noted that the record showed Campbell as having a good ability to understand and remember simple instructions. [Tr. 121, 467]. Campbell also reported to having at least twenty friends and that she has contact with at least one every week. [Tr. 121, 464]. Additionally, the ALJ afforded great weight to Dr. Warren – a conclusion that Campbell has not challenged – who opined that Campbell has the ability to understand and remember simple instructions, attend and concentrate for two hour periods as is required in the typical workplace, interact appropriately with peers and supervisors, and adapt to normal workplace changes. [Tr. 121, 479]. Therefore, even though the ALJ found severe impairments of affective disorder and anxiety disorder, substantial evidence supports his decision to omit limitations in concentration, persistence, and pace in the RFC.

C

Campbell also argues that reversal is required because the ALJ based his credibility determination on an improper basis. In her view, the ALJ may not consider the fact that she did not seek medical treatment without first considering whether that failure was the result of an inability to afford treatment.

7

In determining whether a claimant is disabled, the Commissioner considers statements or reports from the claimant. 20 C.F.R. § 404.1529. To determine whether statements of a claimant are credible, ALJ's employ the following two-part test:

> First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)) (internal citations omitted). In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529; *see also, Felisky v. Bowen*, 35 F.3d 1027, 1037 (6th Cir. 1994). "Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints 'based on a consideration of the entire case record.'" *Rogers,* 486 F.3d at 247.

Importantly, it is within the province of the ALJ, rather than the reviewing court, to evaluate the credibility of claimant. *Id.* (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir.1997); *Crum v. Sullivan,* 921 F.2d 642, 644 (6th Cir.1990); *Kirk v. Sec'y of Health &*

*Human Servs.,* 667 F.2d 524, 538 (6th Cir.1981)). "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (citations omitted). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Id*. at 249.

In determining that Campbell's statements concerning the extent of her limitations were not fully credible, the ALJ provided the following three reasons: (1) they are not supported by the medical evidence of the record; (2) Campbell has not sought treatment commiserate with the level of the claimed impairment; and (3) the treatment notes of her primary physician do not support her statements. As noted above, consistency with the record and nature of treatment are factors that are appropriately considered in determining the level of credibility to afford Campbell's statements. Campbell has not challenged the ALJ's conclusions that her statements are inconsistent with the record and her physician's treatment notes, and these reasons, since they are supported by substantial evidence, are enough to justify a decision to afford less credibility to her self-evaluation. *See Davis v. Astrue,* No. 08–CV–122–GFVT, 2009 WL 2901216, at * 1 (E.D.Ky., Sept.3, 2009) (unpublished) ("The ALJ's failure to consider Davis's ability to afford medical treatment was a harmless error because the ALJ based Davis's credibility on various factors, not just on Davis's lack of frequent medical treatment.").

However, even considering the nature of her treatment, the ALJ has made no error. The Commissioner rightly notes that a claimant's failure to seek additional treatment may be considered as undermining her credibility. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). It is true that Social Security Ruling 96–7p provides that an ALJ "must not draw any inferences about an individual's symptoms ... from a failure to seek or pursue

9

regular medical treatment without first considering any explanations that the individual may provide[.]" SSR 96–7p, 1996 WL 374186, at *7. And such explanations "may provide insight into the individual's credibility. For example[,] ... [t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." *Id.* at *7–8. However, the ALJ did not violate this ruling. In his opinion, the ALJ considered whether cost was an issue in restricting Campbell from obtaining treatment. He stated that he did "not find it reasonable that the lack of finances precludes/precluded the claimant from engaging in or searching for, more consistent and extensive treatment." [Tr. 124]. Indeed, the only evidence that Campbell provides that she could not afford treatment is her own representation to her physician. [Tr. 102]. There is no indication in the record that Campbell actually sought additional treatment, but was turned away due to her inability to pay. On the contrary, the record reveals that Campbell was apparently able to afford routine care from Dr. Hoffman, then the Grayson Outreach Center, and then Dr. Canos. [Tr. 152-159, 349, 401-45, 448-52, 472-76]. Campbell's inability to afford care is further undercut be her ability to purchase items such as cigarettes and crack cocaine during the periods when she allegedly could not afford medical treatment. [Tr. 401-425]; *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988) (noting that the cost of cigarettes reduced the credibility of the claimant's representation that he could not afford treatment). Thus, the ALJ properly made his credibility determination, and that determination is supported by substantial evidence.

D

Finally, Campbell argues that the Vocational Expert was not qualified to serve in that capacity. However, Campbell cites no regulations or case law to set forth what she believes to be the standards this vocational expert failed to meet. At any rate, the record reflects that the

ALJ showed the Vocational Expert's resume during the hearing and asked "Counsel, do you stipulate to Mr. Burnhill serving as VE in this matter?" [Tr. 192]. To that question, Campbell's Attorney responded, "Yes, I do, your honor." [*Id.*] As a result, Campbell "cannot now contest the general qualifications of the VE after *expressly conceding* the qualifications in the hearing before the ALJ." *Yopp-Barber v. Comm'r of Soc. Sec.,* 56 F. App'x 688, 689-90 (6th Cir. 2003) (emphasis in original).

III

Accordingly, for the aforementioned reasons, it is hereby **ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [R. 10] is **DENIED**;

(2) Defendant's Motion for Extension of Time [R. 13] is **GRANTED**;

(3) Defendant's Motion for Summary Judgment [R. 14] is **GRANTED**;

(4) **JUDGMENT** in favor of the Defendant will be entered contemporaneously herewith.

This the 30th day of September, 2014.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge